IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LARRY ZANE SHORT,

   Plaintiff,

vs.                                                                 No. 1:21-cv-01169-STA-jay

CITY OF GRAND JUNCTION,
TENNESSEE
and
CURTIS LANE,

   Defendants.

---

### ORDER TO EFFECT SERVICE OF PROCESS

---

On October 28th, 2021, Plaintiff Larry Zane Short filed this pro se Complaint against Defendant Grand Junction and Defendant Curtis Lane. Docket Entry "D.E." 1. On January 25th, 2022, the Court ordered Plaintiff to pay the required filing fee or file an in forma pauperis affidavit. D.E. 5. Plaintiff filed a Motion to Proceed In Forma Pauperis on February 28th, 2022. D.E. 6. The Court granted Plaintiff's Motion on March 10th, 2022. D.E. 7.

This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05. The Court is required to conduct a screening of the Complaint because Plaintiff sought and received in forma pauperis status. 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, the Clerk of the Court is **ORDERED** to issue process in this matter and deliver that process to the Marshal for service.

I.     PLAINTIFF'S COMPLAINT

Plaintiff brings this action against the City of Grand Junction and Curtis Lane, the city's mayor. D.E. 1. Plaintiff is a resident of Lexington, Tennessee. D.E. 1. Plaintiff's Complaint outlines the following sequence of events. Plaintiff owned the property located at 233 Virginia Street in Grand Junction, Tennessee. D.E. 1 at 2. Apparently, there was an agreement with either a rental tenant or someone living nearby to mow the lawn at that address as Plaintiff lived two hours away. D.E. 1 at 2. This agreement existed in "the Spring of 2020." D.E. 1 at 2. However, the person intended to mow the lawn failed to do so, and Plaintiff's "mower would not do it." D.E. 1 at 2. According to the Plaintiff, approximately one week after attempting to mow the lawn himself, "the city had cut the grass." D.E. 1 at 2.

Although the Complaint does not identify why Plaintiff believed he might have been required to appear before a court, it does state that Plaintiff "visited the office of Grand Junction THREE TIMES over the next [two] months and inquired if [he] was on the court docket." D.E. 1 at 2 (capitalization in original). Apparently, Plaintiff was informed that he was not scheduled for an appearance or hearing. D.E. 1 at 2. He also alleges that he was "NEVER notified of a trial." D.E. 1 at 2. The house at the aforementioned address was then "auctioned off." D.E. 1 at 2.

Plaintiff further alleges that the Mayor authorized private persons, in essence, to steal personal property located in the house. D.E. 1 at 3. These individuals informed others they were "friends of the mayor" and "he gave them permission to take anything they wished." D.E. 1 at 3.

Plaintiff explicitly claims the above conduct amounted to a violation of his Procedural Due Process rights under the Fourteenth Amendment. D.E. 1 at 2. The Court will also consider a claim for a violation of the Takings Clause under the Fifth Amendment. Plaintiff seeks monetary

compensation for the value of the home as well as the personal property allegedly stolen from the home. D.E. 1 at 3. He also seeks $100,000 in punitive damages. D.E. 1 at 3.[1]

## II.     SCREENING STANDARDS

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action:

>   (i)     is frivolous or malicious;
>   (ii)    fails to state a claim on which relief may be granted; or
>   (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim upon which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 667-79 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 681.

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt

---

[1] Plaintiff included an "afterthought" that at one point in time, the attorney for Grand Junction "was a law clerk for the Judge and this could have been an undue influence on [his] trial[.]" D.E. 1 at 3. As there is no separate cause of action for undue influence either under federal law or Tennessee state law, the Court will consider this to be factual support to Plaintiff's Procedural Due Process claim.

3

from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990). Under § 1915(e)(2)(B), the Court has the discretion to refuse to accept allegations in a complaint that are "'clearly baseless,' a term encompassing claims that may be described as fanciful, fantastic, delusional, wholly incredible, or irrational." *Bumpas v. Corr. Corp. of America,* 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (quoting *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992)). Furthermore, a court may "*at any time*, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999) (emphasis added).

### III. FEDERAL LAW CLAIMS ANALYSIS

#### A. SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Litigants must establish that the court has subject matter jurisdiction over their claims through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction. 28 U.S.C. § 1331–1332; 28 U.S.C. § 1367. Federal question jurisdiction is present when a party asserts a cause of action arising under the United States Constitution or a federal statute. 28 U.S.C. § 1331. Diversity jurisdiction is present when there is "complete diversity [of citizenship] between all plaintiffs and all defendants" and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84 (2005). A party's citizenship is determined by their domicile. *Stifel v. Hopkins*, 477 F.2d 1116, 11260 (6th Cir. 1973). A corporation is a citizen of "every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

4

A federal court may exercise supplemental jurisdiction over claims it does not otherwise have jurisdiction to hear independently. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 559 (2005). Supplemental jurisdiction is available where there is at least one claim over which the court has subject matter jurisdiction, and the supplemental claim constitutes part of the same "case or controversy." 28 U.S.C. § 1367(a). The court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Where a federal court dismisses the underlying federal law claims, the court "should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Retaining jurisdiction over state law claims once the federal claims are dismissed "should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh . . . concern[s] over 'needlessly deciding state law issues.'" *Moon*, 465 F.3d at 728 (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

This suit is within the Court's federal question jurisdiction because Plaintiff asserts federal causes of action under the United States Constitution and federal statute. Therefore, the Court has subject matter jurisdiction over this case.

## B.  STATUTE OF LIMITATIONS

However, in order to proceed, a claim must also have been timely brought before the court. The federal law claims are brought pursuant to 42 U.S.C. § 1983. Because the federal statute does not include a limitations period, these actions borrow the state law limitations period. *Guba v. Huron County*, 600 Fed. Appx. 374, 379 (6th Cir. 2015). In Tennessee, the statute of limitations for "civil actions . . . brought under the federal civil rights statutes" is one year. TENN. CODE ANN. § 28-3-104. Although state law determines what the statute of

5

limitations is, federal law governs when the statute of limitations begins to run. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). The statute of limitations begins to run "when plaintiff[] knew or should have known of the injury which forms the basis of [her] claim[]." *Ruff*, 258 F.3d at 500 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)). Moreover, federal law establishes that "[a] plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence." *Id*. at 501 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

In *Sevier*, the Sixth Circuit held that a "person exercising reasonable diligence would expeditiously attempt to determine" their legal rights after a state court adjudicated claims against them. 742 F.2d at 273. The court further highlighted that waiting "over four years" was unreasonable, and a plaintiff "simply . . . [being] ignorant" about their various legal rights was insufficient to toll the statute of limitations. *Id*.

Although the facts provided in the Complaint are not particularly exact, they do provide a general timeframe. It appears Plaintiff's issues with lawn care began in the "Spring of 2020." D.E. 1 at 2. But the issues extended for "8 weeks." D.E. 1 at 2. It was the "following week" that the city took action by cutting Plaintiff's lawn. D.E. 1 at 2. Plaintiff also contacted the local court or another governmental office "over the next two months." D.E. 1 at 2. Plaintiff further asserts that his personal property was taken by a "clean up crew." D.E. 1 at 3.

Plaintiff fails to include the specific date upon which the house was auctioned. He also fails to include the date his personal property was taken. But, reading the Complaint in favor of the Plaintiff, the Court will infer that these claims are not barred by the statute of limitations. Spring months generally include March, April, and May. If Plaintiff began having issues in May of 2020, and those issues continued for eight weeks, then the city likely did not cut his lawn until

July of 2020. The two months beyond that, during which Plaintiff attempted to find more information out about potential proceedings, leads the Court to September of 2020. The auction could have then taken place sometime after September of 2020 because Plaintiff was informed there were no pending proceedings during that period. It is therefore possible that the actual auction, and clean-up after the fact, took place on or after October 25th, 2020. Thus, the accrual date for the federal claims would be the actual auction, the actual removal of Plaintiff's personal property, or a date thereafter when by reasonable diligence Plaintiff learned of these two events. Plaintiff filed this Complaint on October 25th, 2021. D.E. 1.

Because the auction of his house could have taken place within one year of that filing date, the Court will conclude the statute of limitations has not run. Moreover, because the personal property was allegedly taken by individuals cleaning up the house either immediately prior to the auction or after the action, the Court will conclude the statute of limitations has not run as to the personal property claim either.

### C.  FEDERAL LAW CLAIMS AND § 1983

The Constitution establishes fundamental federal rights. But it provides no legal remedies. In order to bring a Constitutional claim, then, civil litigants rely on 42 U.S.C. § 1983. This subsection "creates a right of action for the vindication of constitutional guarantees found elsewhere." *Guba*, 600 Fed. Appx. at 386. Through § 1983, plaintiffs have a "federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by the Constitution or federal law." *Caswell v. City of Detroit Housing Commission*, 418 F.3d 615, 618 (6th Cir. 2005).

In order to succeed on a § 1983 cause of action a plaintiff must establish (1) a "right secured by the Constitution," (2) the right was violated, and (3) the person who violated that

right acted "under color of state law." *Ostipow v. Federspiel*, 824 Fed. Appx. 336, 340 (6th Cir. 2020) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Of course, qualified immunity is an affirmative defense that will shield state actors from liability in a civil lawsuit "so long as his conduct did not violate a clearly established constitutional right." *Ostipow*, 824 Fed. Appx. at 340. A constitutional right "is clearly established where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right' . . . ." *Daily Servs. LLC v. Valentino*, 756 F.3d 893, 900 (6th Cir. 2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The following analysis will discuss whether Plaintiff's Complaint establishes plausible claims for Fifth Amendment Takings violations or Fourteenth Amendment Procedural Due Process violations brought pursuant to § 1983.

**1. Fifth Amendment Takings Clause Claims**

The Fifth Amendment to the United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. This provision does not prohibit the government from *ever* taking personal property. But it does prevent the government from taking personal property for private use or without just compensation. Takings generally come in two forms: regulatory takings and per se takings. *McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010). A regulatory taking occurs when the government enacts legislation limiting the owner's use of property. *McCarthy*, 626 F.3d at 284. To establish a valid Fifth Amendment regulatory taking claim, the plaintiff must establish that the government's regulation leaves the property with "'*no* productive or economically beneficial use' of his property . . . ." *Id*. (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992) (emphasis in original)). A per se taking exists where the

8

government physically occupies the property. *Id.* These federal constitutional protections were incorporated against the states in 1896. *Hall v. Meisner,* 565 F. Supp. 3d 953, 972 (6th Cir. 2021).

Challenges to governmental takings also tend to come in two forms: a challenge to the public use requirement or a challenge to the just compensation requirement. *Wilkins v. Daniels*, 744 F.3d 409, 417 (6th Cir. 2014). A challenge to the just compensation requirement brings before a court the question of whether the compensation for a governmental taking was sufficient. *Wilkins*, 744 F.3d at 417. When the taking is an appropriation, then the owner "is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking." *Jackson v. United States*, 155 Fed. Cl. 689, 694 (2021) (quoting *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984)). Whether compensation is "just" under the meaning of the Constitution is determined by "the fair market value of the property on the date it is appropriated." *Jackson*, 155 Fed. Cl. at 694. But when property is taken to satisfy a monetary obligation owed to the government, the state may *not* execute a strict foreclosure. *Hall*, 51 F.4th at 194 (6th Cir. 2022). There must be some recognition of the foreclosed owner's equitable title in the property, and thus an "owner's right to a surplus after a foreclosure sale . . . ." *Id.* at 195.

A challenge to the public use requirement brings before a court the question of how the government intends to use the property. If the plaintiff can establish that the use is not public (and thus is private use), then the taking is constitutionally invalid—no matter the compensation awarded. *Wilkins*, 744 F.3d at 417. However, the public use requirement is construed very broadly. *Kelo*, 545 U.S. at 480. States may "transfer property from one private party to another if future 'use by the public' is the purpose of the taking." *Id.* at 477. The Constitutional mandate that the taking be for public use, then, is not a "literal requirement." *Id.* at 479 (internal

9

quotations omitted). This Circuit held that "a taking is for a private purpose only if it lacks any 'rational connection to a minimally plausible conception of the public interest.'" *Nw. Ohio Props. Ltd. v. Lucas Cnty.,* 634 Fed. Appx. 579, 580 (6th Cir. 2016) (citing *Montgomery v. Carter Cnty.,* 226 F.3d 758, 768 (6th Cir. 2000)).

A plaintiff may raise a Fifth Amendment takings claim "as soon as a government takes his property for public use without paying for it." *Knick v. Twp of Scott,* 139 S. Ct. 2162, 2170 (2019). Thus, a plaintiff need not wait until the state refuses to provide compensation before they bring a Constitutional claim. *Knick,* 139 S. Ct. at 2170. Plaintiffs may therefore avail themselves of federal court remedies without being required to exhaust state court procedures in seeking just compensation. *Id.* at 2172–73.

But a plaintiff is required to establish a "cognizable Fifth Amendment property interest." *ATS Ford Drive Inv. v. United States,* 153 Fed. Cl. 259, 269 (Ct. Fed. Cl. 2021); see also *Casitas Mun. Water Dist. v. United States,* 708 F.3d 1340, 1348 (Fed. Cir. Ct. App. 2013). Because the Constitution does not create property rights, federal courts must look to state law to determine whether the plaintiff has an identifiable property interest. *Casitas*, 708 F.3d at 1348. These interests can include real property, personal property, and even "interest earned" on public funds in trust accounts. *McCarthy*, 626 F.3d at 284. But mere monetary obligations imposed by the state do not amount to an identifiable property interest that would give rise to a Fifth Amendment Takings claim. *Id.* at 285.

Turning to the case at hand, Plaintiff identifies a cognizable property interest in both the real and personal property at issue. He claims to be the owner of both. Ownership is at the core of the Fifth Amendment protection against governmental takings because "[t]he hallmark of a protected property interest is the right to exclude others . . . [it is] one of the most essential sticks

in the bundle of rights that are commonly characterized as property." *Montgomery,* 226 F.3d at 766 (quoting *College Sav. Bank c. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 627, 673 (1999); *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)). Thus, he is entitled to Fifth Amendment protections.

Although Plaintiff does not state the type of Fifth Amendment challenge he raises specifically, the Court reads the Complaint to allege per se takings violations. This is because the real property was auctioned off and the personal property was allegedly physically removed from the property. These are physical occupations, not regulatory restrictions of the Plaintiff's use of his property.

The Court further reads the Complaint to allege a violation as to the just compensation requirement as to the real property. This is because Plaintiff's requested relief is monetary compensation "for the house." D.E. 1 at 3. The Court infers that Plaintiff was allegedly not properly compensated after the auction of the real property. But the Court does not read the Complaint to challenge the public use requirement of the Fifth Amendment because Plaintiff mentions no issue as to how or why the City auctioned his property.

Additionally, the Court reads the Complaint to raise an issue of public use as to the removal of Plaintiff's personal property. The Complaint alleges that "friends of the [M]ayor" took Plaintiff's personal property because the Mayor "gave them permission to take anything they wished." D.E. 1 at 3. The inference here is that the Mayor authorized private individuals to take Plaintiff's belongings for personal use. Plaintiff also appears to raise an issue of just compensation as to the personal property because he seeks monetary compensation for the loss of this property. D.E. 1 at 3.

The next section analyzes each of these specific claims and whether they meet the

plausibility standard required at the screening stage.

### a. Fifth Amendment Right to Just Compensation

Under the framework of evaluating a § 1983 claim, the first question is what compensatory rights Plaintiff had a right to any proceeds, equity, or excess upon the sale of the property under state law. What states may *not* do is circumvent the Fifth Amendment's just compensation requirement by establishing a foreclosure scheme that denies a property owner's equitable title upon foreclosure proceedings. *Hall*, 51 F.4th at 190–95.[2] Doing so would make the "Takings Clause . . . a dead letter." *Id.* at 190. Under Tennessee state law, a foreclosed property owner, upon making a proper motion, has the right to "excess proceeds" pursuant to a defined disbursement scheme (at least as to tax foreclosures). TENN. CODE. ANN. § 67-5-2702(c). Tennessee's disbursement scheme does not appear, on its face, to violate the Fifth Amendment; instead, it places a properly moving taxpayer fourth in line for such funds. TENN. CODE. ANN. § 67-5-2702(c)(4).

The second question is whether that right to compensation was violated. From the face of the Complaint, there is no information about whether Plaintiff availed himself of any state procedures to request these funds. But of course, the Complaint also does not include any information regarding why Plaintiff's property was auctioned in the first place. However, the Complaint appears to allege Plaintiff received no funds from the sale. And whether Plaintiff sought compensation through the state scheme or not will not extinguish a Fifth Amendment claim. *Knick,* 139 S. Ct. at 2170. Presuming there was any, it appears Plaintiff's right to just compensation was violated by the state's failure to transfer surplus, excess, or equity back to

---

[2] The Sixth Circuit in *Hall* appears to, at least in dicta, indicate that the Constitution itself guarantees some form of equitable title to a foreclosed property owner. 51 F.4th at 194. But the Court there dealt with an issue of Michigan state law that essentially allowed the state to take absolute title to property. It appears Tennessee state law does not present the same conundrum as it allows interested parties to make a motion for the excess profits of a sale, thus recognizing the foreclosed owner's interest. TENN. CODE. ANN. § 67-5-2702.

Plaintiff after the sale.

The third and final question is whether a party acting under color of state law was responsible for the deprivation of Plaintiff's right. Again, absent additional facts not contained in the Complaint, the Court presumes that the City of Grand Junction's officials operated within the capacity of their various offices in mowing Plaintiff's lawn, seizing the property, and making it available for auction. At this point, there is no reason to believe that these actions all took place outside the scope of a city acting pursuant to its authority under state law.

Because Plaintiff had a right to just compensation pursuant to Tennessee state law, he did not receive that compensation, and this right was likely violated by city officials, the Court finds Plaintiff's Fifth Amendment claim as to his real property plausible.

    b. **Fifth Amendment Right to Public Use**

The next issue is whether Plaintiff's Fifth Amendment rights as to his personal property were also violated. Proceeding again with the established § 1983 analysis, the first question is whether Plaintiff had a right to this personal property. Because the Complaint alleges Plaintiff owned this property, the Court finds that he did have Fifth Amendment protections relative to it. *Montgomery,* 226 F.3d at 766. And because those protections apply, Plaintiff had a Constitutional right to prevent the government taking his property for private use. U.S. CONST. amend. V.

The second question is whether Plaintiff's rights were violated. Although the public use requirement of the Fifth Amendment is construed very broadly, Plaintiff's Complaint alleges a very concerning fact pattern. He claims that the city's Mayor told "friends" that they could take Plaintiff's property for their own. D.E. 1 at 3. According to the United States Supreme Court, "it has long been accepted that the sovereign may not take the property of A for the sole purpose of

transferring it to another private party B . . . ." *Kelo*, 545 U.S. at 477. Unfortunately, Plaintiff alleges that exact sequence of events. Presuming this sequence to be true, the Court finds Plaintiff's Fifth Amendment right against private takings to be violated.

Based on the foregoing analysis, the Court will allow Plaintiff's Fifth Amendment claims regarding the taking of his real and personal property to proceed.

### 2. Fourteenth Amendment Due Process Claims

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. To succeed on procedural due process claim, a plaintiff must establish 1) they have a life, liberty, or property interest that is protected by the clause, 2) they were deprived of that interest, and 3) the state failed to afford the plaintiff "adequate procedural rights prior to depriving [them] of the property interest." *Langtston v. Charter Twp. of Redford*, 623 Fed. Appx. 749, 758 (6th Cir. 2015) (internal citations omitted).

#### a. Plaintiff's Property Interest

The first question is whether Plaintiff had a property interest protected by the Fourteenth Amendment. He did. Plaintiff asserts that he owned the real and personal property taken by the state in this case. The Fourteenth Amendment recognizes property interests merely as tenants. *Revis v. Meldrum*, 489 F.3d 273, 284 (6th Cir. 2007) (holding that a tenant has a constitutional right to pre-deprivation hearings "in light of the importance of [a tenant's] interest in maintaining possessory rights to their place of residence." (internal citations omitted)). Outright ownership certainly falls within the scope of a property interest protected by the clause. *Montgomery,* 226 F.3d at 766.

### b. Deprivation of Plaintiff's Interest

The second question is whether Plaintiff was deprived of his interest in the property he owned. He was. As the owner of the property, Plaintiff was entitled to the exclusive use and control of the parcel. *Id.* He had, as many courts describe it, all the sticks in the bundle of property rights. *Id.* This included the right to exclude others. *Id.* But by taking and auctioning off the property, the state deprived Plaintiff of these rights of property ownership.

### c. The State's Procedures

The critical and final question is whether the state failed to afford Plaintiff the necessary procedural due process rights as guaranteed by the Constitution. Put another way, the question is whether the state granted Plaintiff the process he was due. To provide acceptable due process, the state must ensure "that individuals . . . receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). "The right to prior notice and a hearing is central to the Constitution's command of due process." *James Daniel Good*, 510 U.S. at 53. There are times when the government may take property without a pre-deprivation hearing, but those situations are "exceptions" and are considered "extraordinary situations." *Id.* In short, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Johnson v. Morales*, 946 F.3d 911, 927 (6th Cir. 2020) (internal quotations omitted). And when it comes to property, the meaningful time is generally prior to the state taking the property at issue. *Revis*, 489 F.3d at 281; *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

But not all seizures of property prior to a hearing will amount to a due process violation. Instead, courts evaluate the following factors to determine whether a due process violation

occurred: 1) the private interested affected, 2) the risk of erroneous deprivation, and 3) the government's interest. *Johnson*, 946 F.3d at 922. And the process due to Plaintiff differs when evaluating his rights regarding real property versus personal property.

Where personal property is at issue, or property that is subject to a criminal investigation, deprivation prior to a hearing may still comport with the Fourteenth Amendment's protections. *James Daniel Good*, 510 U.S. at 52–54. But this is because personal property is easier to elude government seizure if the owner is not cooperative. *Id.* And yet, the Supreme Court has held that a pre-deprivation hearing is required for items like appliances and furniture. *Fuentes v. Shevin*, 407 U.S. 67, 70–71, 81 (1972).

Real property is different: the private interest is in the property much greater. Although the risk of erroneous deprivation may not be as high with real property, the government's interest in seizure before a hearing is lower. That is because the property cannot be moved or absconded with. *James Daniel Good*, 510 U.S. at 53–54.

Here, Plaintiff complains of property deprivation related to real and personal property. The private interest affected as to the personal property is Plaintiff's ownership rights in a "lifetime's collection" of antiques and other personal belongings. D.E. 1 at 3. There are no facts to support the idea that the government's interest was particularly significant. It does not appear Plaintiff's personal property was central to a government investigation, criminal activity, or otherwise at risk of eluding government seizure. Instead, it appears much of what was seized was valuable to Plaintiff such that he would not readily dispose of it. There is no indication that time was of the essence for the government such that this seizure without a pre-deprivation hearing was necessary. Moreover, the risk of an erroneous deprivation is always higher where the government fails to hold a pre-deprivation hearing. All three factors weigh in favor of Plaintiff;

on the face of the Complaint, it appears the Defendants denied Plaintiff his Procedural Due Process rights by seizing his personal property without a pre-deprivation hearing.

As to the real property, it appears Plaintiff's Procedural Due Process rights were also violated. Plaintiff's private interest in the unmolested ownership of his property is extremely high. *James Daniel Good,* 510 U.S. at 53–54. Parties have a heightened interest in their dwellings; and even though Plaintiff may not have lived at the disputed property, the ownership interest remains. The government's interest in this case is not entirely clear. It is likely that Plaintiff owed taxes, but the property may have been seized pursuant to some type of condemnation proceeding. Assuming the City's interest is not related to some type of criminal activity, then the government's interest in the property is likely lower than Plaintiff's ownership interest. And, as above, the risk of erroneous deprivation is always more significant without a pre-deprivation hearing. Thus, the factors also weigh in favor of Plaintiff's claim of a Procedural Due Process claim as to the real property.

The Court is presuming that the government here did not provide a pre-deprivation hearing. This is because Plaintiff states that he attempted to participate in some type of court proceeding at the local level, but he was never given a date to appear.

But there are facts in the Complaint that bring that presumption into question. In particular, Plaintiff did have some reason to believe he was required to appear in court. Whether that was because he knew the city had cut his grass, or because he received some type of notice, the facts are not entirely clear. What is clear is that Plaintiff did not know when he was required to appear if there was a pre-deprivation hearing (despite taking steps to inquire about such a hearing). Moreover, Plaintiff notes that there may have been an issue of "undue influence" between the attorney and judge as the attorney once clerked for the judge. D.E. 1 at 3. The Court

will consider this factual support for a claim that, if there were a pre-deprivation hearing, there were also issues in the actual execution of that hearing. Therefore, even if the City did conduct a pre-deprivation hearing, the Court finds it plausible that Plaintiff's Procedural Due Process rights were violated because Plaintiff was not given a court date and there may be issues of recusal on the part of the judge or attorney.

### IV.   CONCLUSION

As the Court is required to screen pro se Complaints pursuant to § 1915, the Court must base its screening on the factual allegations set forth in a Complaint and view those allegations in the light most favorable to the Plaintiff. The Court is well aware that allegations set forth in Plaintiff's Complaint may ultimately be deemed inaccurate or unsubstantiated, and the viability of Plaintiff's claims will naturally be affected by development of the record in this matter. However, based upon the (at times) sparse averments in the Complaint, the Court finds that Plaintiff has pled plausible claims under the Fifth and Fourteenth Amendments. Accordingly, it is ORDERED that the Clerk shall issue process for Defendants and deliver that process to the Marshal for services. Process shall include a copy of Plaintiff's Complaint as well as this Order. Service shall be made upon Defendants pursuant to Rule 4(h) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States.

It is further **ORDERED** that Plaintiff shall make a certificate of service on every document filed. Plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and the local rules of this Court. Plaintiff shall promptly notify the Clerk of any change of address or whereabouts. Failure to comply with these requirements, or any other order of the Court, may result in this case being dismissed without further notice.

It is so ORDERED this the 9th day of January, 2023.

                                        **s/Jon A. York**
                                        UNITED STATES MAGISTRATE JUDGE